1 | MITCHELL CHYETTE [113087]
Law Office of Mitchell Chyette
2 | 125 12th Street
Suite 100-BALI
3 | Oakland, CA 94607
Telephone: (510) 388-3748
4 | Email: mitch@chyettelaw.com
Attorney for Laura Young

5

6

7

US DISTRICT COURT

8

EASTERN DISTRICT OF CALIFORNIA

9

10 | LAURA YOUNG,

Case No.

11 |        Plaintiff,

**COMPLAINT AND DEMAND FOR JURY TRIAL**

12 |    vs

13 | NATIONSTAR MORTGAGE LLC D/B/A
MR. COOPER,

14

      Defendant.

15

16

17

18

19

20

21

22

23

24

Plaintiff Laura Young, through counsel, for her Complaint for Damages against Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper, states as follows:

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Laura Young ("Young") is the owner of residential real property, located at and commonly known as 22 Saginaw Circle, Sacramento, CA 95833 (the "Home").

2.     Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Mr. Cooper") is a foreign limited liability company incorporated under the laws of the State of Delaware that maintains its headquarters and principal place of business at 8950 Cypress Waters Blvd., Dallas, TX 75019.

3.     Mr. Cooper is the servicer of a note executed by Young (the "Note") and of a deed of trust on the Home that secures said note (the "DOT") (collectively, the "Loan"). Mr. Cooper has been the servicer of the Loan since June 4, 2013.

4.     Young obtained the Loan primarily for consumer or household purposes, namely, to purchase the Home as her residence.

5.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, et seq. ("RESPA").

6.     This Court has supplemental jurisdiction to hear any state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

COMPLAINT and DEMAND FOR JURY TRIAL
*Laura Young v. Nationstar Mortgage, LLC d/b/a Mr. Cooper*
Case No.

7.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF CLAIMS

8.     This action is filed to enforce statutory provisions of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601, et seq. and the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601, et seq., as well as regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, et seq. ("Regulation X") and 12 C.F.R. § 1026.1, et seq. ("Regulation Z").

9.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

10.     Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013) and the Mortgage Servicing Rules Under the Truth in Lending Act, 78 F.R. 10901 (February 14, 2013) (Regulation Z), which became effective on January 10, 2014.

11.     Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to the allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

12.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

13.     The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

14.     Young asserts claims for relief against Mr. Cooper for violations of the specific rules under RESPA, Regulation X, TILA, and Regulation Z, as set forth, infra.

15.     Young has a private right action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

16.     TILA provides that a creditor or servicer of a home loan shall provide an accurate payoff balance within a reasonable period, but within seven (7) business days regardless of circumstances, upon receipt of a written request from a borrower for the same. 15 U.S.C. § 1639g.

17.     Through Regulation Z, the CFPB provided guidance for the interpretation of certain TILA provisions, including servicers' duties related to responding to requests for a payoff balance.

18.     Regarding payoff statements, Regulation Z provides that:

> In connection with a consumer credit transaction secured by a consumer's dwelling, a creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date. The statement shall be sent within a reasonable time,

3

COMPLAINT and DEMAND FOR JURY TRIAL
*Laura Young v. Nationstar Mortgage, LLC d/b/a Mr. Cooper*
Case No.

but in no case more than seven business days, after receiving a written request from the consumer or any person acting on behalf of the consumer. When a creditor, assignee, or servicer, as applicable, is not able to provide the statement within seven business days of such a request because a loan is in bankruptcy or foreclosure, because the loan is a reverse mortgage or shared appreciation mortgage, or because of natural disasters or other similar circumstances, the payoff statement must be provided within a reasonable time.

12 C.F.R. § 1026.36(c)(3).

19.    The Loan is a closed-end consumer credit transaction secured by the Home, a home loan, and a consumer credit transaction secured by the Home, as contemplated by TILA and Regulation Z. 15 U.S.C. § 1639g; 12 C.F.R. § 1026.36(b).

20.    Young has a private right action under TILA pursuant to 15 U.S.C. § 1640(a) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

## FACTUAL BACKGROUND

21.    On or about March 6, 2009, Young and non-party Judith A. Stege (collectively, the "Borrowers") obtained the Loan from non-party Residential Acceptance Network, Inc.

22.    On or about June 4, 2013, non-party Bank of America, N.A. transferred the servicing of the Loan to Mr. Cooper.

23.    In early 2016, Mr. Cooper and the Borrowers reached an agreement to modify the Loan effective March 1, 2016 (the "Modification"). A copy of the Modification is attached as Exhibit 1.

24.    The Modification states that the unpaid principal balance would be set to "$246,631.33, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized, which is limited to escrow and any legal fees and related foreclosure costs that may have been accrued for work completed." *See*, Exhibit 1 (emphasis added).

25.    According to the Borrowers' Mortgage Loan Statement dated August 16, 2016, Mr. Cooper had implemented the Modification and the Borrowers owed $1,781.55 as a regular monthly payment. Copies of the Borrowers' Monthly Loan Statements are attached as Exhibit 2.

26.    However, during the next month, Mr. Cooper began assessing improper fees and charges, namely, charges in the amount of $42.10 for "Overdue Payment(s)", which the Borrowers paid in addition to their monthly payment. *See*, Exhibit 2, Borrowers' Mortgage Loan Statements dated September 15, 2016, October 12, 2016, November 15, 2016, January 11, 2017, February 10, 2017, March 10, 2017, April 11, 2017, and May 11, 2017.

27.    As shown by the mortgage statements discussed in the preceding paragraph, the Borrowers were current on their obligation to pay their monthly payments. However, Mr. Cooper assessed charges for items marked "Lender Paid Expenses" to the Loan. This amount consists of amounts for "Property Inspections" and "Maintenance." *See*, Exhibit 2.

28.    Despite Mr. Cooper claiming that it incurred "Property Inspections" and "Maintenance" costs, Young is not aware of any activities related to the Home

performed by any representative or contractor of Mr. Cooper that would meet these descriptions.

29.    In 2018, the Borrowers looked into refinancing the Loan to take advantage of lower interest rates. However, due to Mr. Cooper's actions in charging the Loan unnecessary fees, the Borrowers were never in a position to refinance the Loan.

30.    On or about January 31, 2020, Young, through counsel, sent a notice of error pursuant to 12 C.F.R. § 1024.35 ("NOE #1") to Mr. Cooper at the address designated by Mr. Cooper for receipt of requests for information pursuant to 12 C.F.R. § 1024.36(b) and notices of error pursuant to 12 C.F.R. § 1024.35(c) (the "Designated Address") via Certified Mail. A copy of NOE #1 with tracking information from the website for the United States Postal Service (USPS) (www.usps.com) is attached as Exhibit 3.

31.    Through NOE #1, Young alleged that Mr. Cooper committed errors pursuant to 12 C.F.R. § 1024.36(b)(5) for the imposition of fees for which there was no reasonable basis to impose. *See*, Exhibit 3.

32.    In NOE #1, Young states:

Regarding Loan, the Borrower and Carrington [sic] entered into a Home Affordable Modification Agreement effective March 1, 2016 (the "Modification"). A copy of the Modification is in Mr. Cooper's possession and was previously enclosed with the Response. The Modification provides, in part, as follows:

As of March 1, 2016, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is

U.S. $246.631.33, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized, which is limited to escrows and any legal fees and related foreclosure costs that may have been accrued for work completed

See the Modification at § 1. Upon information and belief, there are outstanding fees and charges on the Loan in excess of $542.95. Mr. Cooper sent a Mortgage Loan Statement dated August 20, 2019 stating that there were $542.95 in Lender Paid Expenses outstanding consisting of $87.50 for property inspections and $455.45 for maintenance. A copy of the Mortgage Loan Statement dated August 20, 2019 is enclosed for your reference. Moreover, in the reinstatement amount submitted with the Response, Mr. Cooper claimed that there were $582.95 in corporate advances (likely inclusive of the $542.95) that would need to be paid in order to reinstate the Loan.

The Borrower believes that most, if not all these fees are for fees and charges incurred prior to the effective date of the Modification. Such amounts should have been rolled into the unpaid principal balance of the Loan pursuant to the express terms of the Modification.

*See*, Exhibit 3.

33.     Mr. Cooper received NOE #1 at the Designated Address on February 10, 2020. *See*, Exhibit 3.

34.     On or about February 19, 2020, Mr. Cooper sent correspondence to Young in response to NOE #1 (the "February 2020 Response"). A copy of the February 2020 Response is attached as Exhibit 4.

35.     In the February 2020 Response, Mr. Cooper states:

The corporate advances in the amount of $602.95 were not added to the unpaid principal balance when the modification was completed. The breakdown of these fees are as follows:

Property inspections-$147.50
Landscaping periodically-$169.20
Locksmith-$155.00
Photos-$131.25

*See*, Exhibit 4.

36.     The February 2020 Response is deficient on its face because any corporate advances incurred before the execution of the Modification should have been incorporated into the unpaid principal balance when the Modification was offered because the corporate advances, property inspection, and maintenance costs, would qualify as "related foreclosure costs". *See*, Exhibit 3.

37.     Despite Young questioning the validity of the corporate advances, it appears that Mr. Cooper did nothing more than consult its record-keeping software to investigate the nature of the fees that it charged the Borrowers.

38.     On or about December 17, 2020, Young, through counsel, sent a second notice of error pursuant to 12 C.F.R. § 1024.35 ("NOE #2") to Mr. Cooper at the Designated Address via Certified Mail. A copy of NOE #2 with tracking information from the website for the USPS (www.usps.com) is attached as Exhibit 5.

39.     Through NOE #2, Young reiterated that Mr. Cooper committed errors pursuant to 12 C.F.R. § 1024.36(b)(5) for the imposition of fees for which there was no reasonable basis to impose. *See*, Exhibit 5.

40.     Mr. Cooper received NOE #2 at the Designated Address on December 31, 2020. *See*, Exhibit 5.

41.     As a result of Mr. Cooper's vague response to NOE #1, on or about December 22, 2020, Young, through counsel, sent two (2) requests for information

(the "RFIs") via Certified Mail to Mr. Cooper at the Designated Address, specifically:

      a.    A request for information pursuant to 12 C.F.R. § 1024.36, 15 U.S.C. § 1641(f)(2), and 12 C.F.R. § 1026.36(c)(3), notably requesting the identity and contact information for the owner or investor of the Loan and an accurate payoff statement ("RFI #1"); and,

      b.    A request for information pursuant to 12 C.F.R. § 1024.36 requesting information and/or documents related to the Loan, including, a life of loan transaction history, servicing notes, any broker's price opinions, the physical location of the original note, a copy of the original note, Mr. Cooper's two most recent escrow analyses, a reinstatement quote, and information related to loss mitigation ("RFI #2").

A copy of the RFI #1 with tracking information from the website for the USPS (www.usps.com) is attached as Exhibit 6 and a copy of the RFI #2 with tracking information from the website for the USPS (www.usps.com) is attached as Exhibit 7.

     42.    Mr. Cooper received the RFIs at the Designated Address on December 28, 2020. *See*, Exhibits 6 and 7.

     43.    Upon information and belief, Mr. Cooper failed to respond to RFI #1's request for an accurate payoff statement within seven (7) business days, or on or before January 7, 2021.

44.     On or about January 26, 2021, Mr. Cooper sent a response to the RFIs (the "Response to the RFIs") that did not provide Young with an accurate payoff statement. A copy of the Response to the RFIs is attached as Exhibit 8.

45.     On or about February 4, 2021, Young, through counsel, sent a third notice of error pursuant to 12 C.F.R. § 1024.35 ("NOE #3") to Mr. Cooper at the Designated Address via Certified Mail. A copy of NOE #3 with tracking information from the website for the USPS (www.usps.com) is attached as Exhibit 9.

46.     Through NOE #3, Young alleged that Mr. Cooper committed an error pursuant to 12 C.F.R. § 1024.35(b)(6) and 12 U.S.C. § 2605(k)(1)(C) for its failure to timely provide Young with an accurate payoff statement. *See*, Exhibit 9.

47.     Mr. Cooper received NOE #3 at the Designated Address on February 17, 2021. *See*, Exhibit 9.

48.     On or about March 2, 2021, Mr. Cooper sent correspondence to Young in response to NOE #2 and NOE #3 (the "March 2021 Response"). A copy of the March 2021 Response is attached as Exhibit 10.

49.     In the March 2021 Response, Mr. Cooper states:

> Regarding your request to waive the corporate advances on the account, unfortunately, we are unable to honor your request. These corporate advances were from the prior delinquency when your client was approved for the modification. The fees in the amount of $602.95 will remain on the account until they are paid.

***

COMPLAINT and DEMAND FOR JURY TRIAL
*Laura Young v. Nationstar Mortgage, LLC d/b/a Mr. Cooper*
Case No.

The corporate advances in the amount of $602.95 were not added to the unpaid principal balance when the modification was completed. The breakdown of these fees are as follows:

Property inspections-$147.50
Landscaping periodically-$169.20
Locksmith-$155.00
Photos-$131.25

*See*, Exhibit 10.

50.     Like the February 2020 Response, the March 2021 Response is deficient on its face, as discussed by NOE #1, because corporate advances "from the prior delinquency" should have been incorporated into the unpaid principal balance when the Modification was offered because the corporate advances, property inspection, and maintenance costs, would qualify as "related foreclosure costs". *See*, Exhibit 3.

51.     As indicated by the use of the exact same wording, Mr. Cooper did nothing more than consult the February 2020 Response when responding to NOE #2.

52.     Mr. Cooper did not include an accurate payoff statement as an enclosure to the March 2021 Response and Mr. Cooper wholly failed to address Young's concern as stated in NOE #3.

53.     On or about August 27, 2021, Young, through counsel, sent a fourth notice of error pursuant to 12 C.F.R. § 1024.35 ("NOE #4") to Mr. Cooper at the Designated Address via Certified Mail. A copy of NOE #4, without supporting

attachments, and tracking information from the website for the USPS

(www.usps.com) for NOE #4 is attached as Exhibit 11.

54.    Through NOE #4, Young alleged that Mr. Cooper committed errors

pursuant to 12 C.F.R. § 1024.35(b)(2) and for its failure to apply accepted payments

to principal, interest, escrow, or other charges under the terms of the Loan and

applicable law and pursuant to 12 C.F.R. § 1024.35(b)(5) for the imposition of fees

for which there was no reasonable basis to impose. *See*, Exhibit 11.

55.    In NOE #4, Young explained to Mr. Cooper that it charged the

Borrowers fees of $42.10 from October 2016 through May 2017, for a total of at least

$336.80, despite the Borrowers being current on their obligations. *See*, Exhibit 11.

56.    Additionally, Young requested copies of documentation that Mr.

Cooper relied upon in drafting the March 2021 Response pursuant to 12 C.F.R. §

1024.35(e)(4), specifically documents and/or information that show the validity of

corporate advances and the dates Mr. Cooper incurred such charges. Young clearly

stated that Mr. Cooper would need to do more than rely on its inaccurate

transaction history to support charging the Borrowers for these corporate advances.

*See*, Exhibit 11.

57.    Mr. Cooper received NOE #4 at the Designated Address on September

2, 2021. *See*, Exhibit 11.

58.    On or about November 2, 2021, Mr. Cooper sent correspondence to

Young in response to NOE #4 (the "November 2021 Response"). A copy of the

November 2021 Response is attached as Exhibit 12.

59.    In the November 2021 Response, Mr. Cooper states:

> Corporate advances in the amount of $602.95 were assessed post modification. The landscaping fee of $147.50, locksmith fee of $155.00 and photos fee of $131.25 are all property preservation related fees assessed in November 2016. There were $165.00 in property inspections assessed between March 2018 through December 2019, while the loan was in default. A $17.50 fee was removed as unrecoverable on September 27, 2018. These fees have been confirmed to be valid as they occurred post modification and while the account was in default. We have enclosed a copy of the Deed of Trust which will verify the fees that can be assessed with [sic] the mortgage is in default.

*See*, Exhibit 12.

60.    Mr. Cooper wholly fails to address the improper fees and charges from October 2016 through May 2017 in the amount of $336.80. As shown above, Mr. Cooper only addresses property inspection fees in the amount of $165.00 from March 2018 through December 2019. *See*, Exhibit 12.

61.    The statement that the $602.95 in corporate advances "were assessed post modification" is in direct contradiction to Mr. Cooper's previous statements that "[t]hese corporate advances were from the prior delinquency when your client was approved for the modification." *See*, Exhibits 4 and 10.

62.    If Mr. Cooper incurred the corporate advances before the effective date of the Modification, such amounts should have been rolled into the unpaid principal balance of the Loan pursuant to the express terms of the Modification. If Mr. Cooper incurred the corporate advances in November 2016, the Borrowers were not in default at that time, and such charges are wholly improper.

63.     In response to Young's request for supporting information and/or documents pursuant to 12 C.F.R. § 1024.35(e)(4) to show that Mr. Cooper actually incurred the corporate advances it sought to collect from the Borrowers, Mr. Cooper only provided its Detail Transaction History and the deed of trust. *See*, Exhibit 12.

64.     In NOE #4, Young specifically stated that Mr. Cooper's Detail Transaction History would not be sufficient to show that the corporate advances were valid charges or when Mr. Cooper incurred the charges. Young has repeatedly disputed the accuracy of the Detail Transaction History. *See*, Exhibit 11.

65.     The deed of trust may list "the fees that can be assessed with [sic] the mortgage is in default," but it does not logically show when Mr. Cooper actually incurred the fees. Further, as discussed, supra, the Borrowers were not in default in November 2016.

66.     By failing to provide supporting documentation beyond the Detail Transaction History and deed of trust, Mr. Cooper implicitly admits that it did not perform reasonable investigations into the errors asserted through NOE #1, NOE #2, and NOE #4.

**DAMAGES INCURRED BY AND IMPACT UPON YOUNG**

67.     Mr. Cooper's actions directly and proximately caused the following actual damages to Young:

a.     Mr. Cooper has assessed improper fees and/or charges to the Loan which Young has paid or for which Mr. Cooper has claimed her liable;

14

COMPLAINT and DEMAND FOR JURY TRIAL
*Laura Young v. Nationstar Mortgage, LLC d/b/a Mr. Cooper*
Case No.

b.      Young had to retain and pay legal counsel to submit the RFIs and NOE #1, NOE #2, NOE #3, and NOE #4 (collectively, the "NOEs") to Mr. Cooper, pay postage costs for the mailing of these documents and the review the responses to these documents;

c.      Mr. Cooper's actions have prevented and delayed Young's ability to refinance the Loan;

d.      Mr. Cooper's actions have resulted in a diminished credit score for the furnishing of the improper credit information; and,

e.      Mr. Cooper's actions have caused Young to experience extreme emotional distress that has resulted in loss of sleep, anxiety, depression, and other significant emotional distress.

## PATTERN AND PRACTICE OF REGULATION X
## VIOLATIONS BY MR. COOPER

68.      Mr. Cooper's actions are part of a pattern and practice of behavior in violation of Young's rights and in abdication and contravention of Mr. Cooper's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

69.      As of the filing of this Complaint, Mr. Cooper has had Six Thousand Seven Hundred Thirty-Nine (6,739) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow account" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly

accessible online database which can be accessed at the following link:

http://www.consumerfinance.gov/data-research/consumer-complaints/.

70.    As of the filing of this Complaint, Mr. Cooper has had Seven Thousand Three Hundred Fifty-One (7,351) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at the following link:

http://www.consumerfinance.gov/data-research/consumer-complaints/.

71.    Young has reviewed the CFPB's consumer complaint database and has identified other similar alleged RESPA violations by Mr. Cooper against other borrowers. In particular, Young has reviewed the fifteen (15) consumer complaints attached hereto and identified as Group Exhibit 13. The date, details, and a narrative disclosed by the consumer are set forth in each complaint. The complaints show conduct that demonstrates that Mr. Cooper has engaged in a pattern or practice of violating RESPA with respect to other borrowers.

**COUNT ONE:**

**VIOLATIONS OF 12 C.F.R. § 1024.35(e) AND 12 U.S.C. § 2605(k)**

**(Failure to properly respond to NOE #1, NOE #2, NOE #3, and NOE #4)**

72.    Young restates and incorporates all of the statements and allegations contained in paragraphs 1 through 71 in their entirety as if fully rewritten herein.

COMPLAINT and DEMAND FOR JURY TRIAL
*Laura Young v. Nationstar Mortgage, LLC d/b/a Mr. Cooper*
Case No.

73.    "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a)

74.    Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

75.    A servicer must respond to a notice of error by either:

(A)    Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B)    Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i).

76.    A servicer must respond to a notice of error not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives a notice of error for errors asserted pursuant to 12 C.F.R. § 1024.35(b)(6) and generally not later than 30 days (excluding legal public holidays, Saturdays, and

Sundays) after the servicer receives other notices of error. 12 C.F.R. §

1024.35(e)(3)(i)(C).

77.    "A servicer of a federally related mortgage shall not...fail to take timely

action to respond to a borrower's requests to correct errors relating to allocation of

payments, final balances for purposes of paying off the loan, or avoiding foreclosure,

or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

78.    A servicer of a federally related mortgage shall not "fail to comply with

any other obligation found by the Bureau of Consumer Financial Protection, by

regulation, to be appropriate to carry out the consumer protection purposes of this

chapter." 12 U.S.C. § 2605(k)(1)(E).

79.    Each of the NOEs constitutes a notice of error as defined by 12 C.F.R. §

1024.35(a) as each is a "written notice from the borrower that asserts an error and

that includes the name of the borrower, information that enables the servicer to

identify the borrower's mortgage loan account, and the error the borrower believes

has occurred." *See*, Exhibits 3, 5, 9, and 11.

80.    Young sent each of the NOEs to Mr. Cooper at the Designated Address

and Mr. Cooper received each such notice at such address. *See*, Exhibits 3, 5, 9,

and 11.

81.    Through NOE #1, Young alleged that Mr. Cooper committed errors

pursuant to 12 C.F.R. § 1024.36(b)(5) for the imposition of fees for which there was

no reasonable basis to impose. Young explains that Modification provides that

"escrows and any legal fees and related foreclosure costs" should have been included

in the Unpaid Principal Balance and Mr. Cooper should not be attempting to collect these fees from the Borrowers. *See*, Exhibits 1 and 3.

82. There is no indication that Mr. Cooper performed a reasonable investigation into the errors asserted by NOE #1, as Mr. Cooper admits in the February 2020 Response that "[t]he corporate advances in the amount of $602.95 were not added to the unpaid principal balance when the modification was completed." *See*, Exhibit 4.

83. Through NOE #2, Young reiterated that Mr. Cooper committed errors pursuant to 12 C.F.R. § 1024.36(b)(5) for the imposition of fees for which there was no reasonable basis to impose. *See*, Exhibit 5.

84. There is no indication that Mr. Cooper performed a reasonable investigation into the errors asserted by NOE #2, because, as indicated by the use of the same exact wording, Mr. Cooper did nothing more than consult the February 2020 Response. *See*, Exhibit 10.

85. The February 2020 Response and March 2021 Response are deficient on their face, as discussed by NOE #1, because corporate advances "from the prior delinquency" should have been incorporated into the unpaid principal balance when the Modification was offered because the corporate advances, property inspection, and maintenance costs, would qualify as "related foreclosure costs". A review of the Modification would have alerted Mr. Cooper to the fact that the corporate advances, assuming the charges were costs actually incurred by Mr. Cooper, which are from "the prior delinquency" are related foreclosure costs.

86.    The February 2020 Response and March 2021 Response show that Mr. Cooper did nothing more than repeat the information contained in its record-keeping software in response to a question about the validity and date of such fees that it charged the Borrowers.

87.    Through NOE #3, Young alleged that Mr. Cooper committed an error pursuant to 12 C.F.R. § 1024.35(b)(6) and 12 U.S.C. § 2605(k)(1)(C) for its failure to timely provide Young with an accurate payoff statement. *See*, Exhibit 9.

88.    In the March 2021 Response, Mr. Cooper fails to provide an accurate payoff statement despite two requests by Young and Mr. Cooper fails to once acknowledge the error asserted in NOE #3 that Mr. Cooper failed to provide Young with an accurate payment statement by January 7, 2021. *See*, Exhibit 10.

89.    In the March 2021 Response, Mr. Cooper fails to provide an accurate payoff statement despite two requests by Young and Mr. Cooper fails to once acknowledge the error asserted in NOE #3 that Mr. Cooper failed to provide Young with an accurate payment statement by January 7, 2021. *See*, Exhibit 10.

90.    Through NOE #4, Young alleged that Mr. Cooper committed errors pursuant to 12 C.F.R. § 1024.35(b)(2) and for its failure to apply accepted payments to principal, interest, escrow, or other charges under the terms of the Loan and applicable law and pursuant to 12 C.F.R. § 1024.35(b)(5) for the imposition of fees for which there was no reasonable basis to impose. *See*, Exhibit 11.

91.     In NOE #4, Young explained to Mr. Cooper that it charged the Borrowers fees of $42.10 from October 2016 through May 2017, for a total of at least $336.80, despite the Borrowers being current on their obligations. *See*, Exhibit 11.

92.     There is no indication that Mr. Cooper performed a reasonable investigation into the errors asserted by NOE #4, because Mr. Cooper fails to address the fees assessed from October 2016 through May 2017 in the November 2021 Response. *See*, Exhibit 12.

93.     Despite Mr. Cooper claiming that it incurred "Property Inspections" and "Maintenance" costs, Young is not aware of any activities related to the Home performed by any representative or contractor of Mr. Cooper that would meet these descriptions.

94.     As a result, Young requested copies of documentation that Mr. Cooper relied upon in drafting the March 2, 2021, Response pursuant to 12 C.F.R. § 1024.35(e)(4), specifically documents and/or information that show the validity of corporate advances and the dates Mr. Cooper incurred such charges. Young clearly stated that Mr. Cooper would need to do more than rely on its Detail Transaction History to support charging the Borrowers for these corporate advances. *See*, Exhibit 11.

95.     By failing to provide anything more than its Detail Transaction History and the deed of trust, Mr. Cooper admits that it repeatedly failed to perform reasonable investigations into the errors asserted by NOE #1, NOE #2, and NOE #4. Mr. Cooper failed to provide any invoice that shows that it actually incurred the

corporate advances, and, upon information and belief, Mr. Cooper did nothing more than consult its Detail Transaction History.

96.    The February 2020, March 2021, and November 2021 Responses (the "Responses") did not fulfill Mr. Cooper's obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as Mr. Cooper did not admit that any errors occurred as alleged in the NOEs.

97.    The Responses did not fulfill Mr. Cooper's obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as it is clear from the face of the Responses and the Modification that Mr. Cooper did not perform reasonable investigations into the errors alleged through the NOEs before determining that no such errors occurred.

98.    Mr. Cooper's failure to perform a reasonable investigation into, and otherwise properly respond to, the errors alleged through the NOEs constitute violations of 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) and, as a result, Young has suffered actual damages as detailed, supra, at ¶ 67.

99.    Mr. Cooper's actions are part of a pattern or practice of behavior in conscious disregard for Young's rights.

100.    As a result of Mr. Cooper's actions, Mr. Cooper is liable to Young for statutory damages and actual damages as further described, supra. 12 U.S.C. § 2605(f)(1).

101.    Additionally, Young requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**COUNT TWO:**

**VIOLATIONS OF 15 U.S.C. § 1639g AND 12 C.F.R. § 1026.36(c)(3)**

**(Failure to provide an accurate payoff statement)**

102.    Young restates and incorporates all of the statements and allegations contained in paragraphs 1 through 71 in their entirety as if fully rewritten herein.

103.    Young submitted RFI #1 seeking a payoff statement of the Loan pursuant to 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3) on or about December 22, 2020, and Mr. Cooper received RFI #1 on December 28, 2020. *See*, Exhibit 6.

104.    In response to Young's request for a payoff statement, Mr. Cooper failed to provide accurate payoff statements as required by 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3), as Mr. Cooper failed to provide Young with any payoff statement.

105.    Young was harmed as a result of the actions of Mr. Cooper, as further discussed supra, at ¶ 67, including, but not limited to, legal fees and costs incurred with sending NOE #3, which would not have been necessary but for Mr. Cooper's failure to provide an accurate payoff statement.

106.    As a result of its actions, Mr. Cooper is liable to Young for actual damages, statutory damages, costs, and attorneys' fees. 15 U.S.C. §§ 1640(a)(1)-(3).

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff Laura Young respectfully requests that this Court enter an Order granting Judgment against Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper as follows:

A.    For an award of actual damages in the amount to be determined at trial, as applicable, as to all of the allegations contained in Counts One and Two;

B.    For an award of Two Thousand Dollars ($2,000.00) for each of the at least four violations of RESPA or at least Eight Thousand Dollars $8,000.00 total, as to all of the allegations contained in Count One;

C.    An award of statutory damages of Four Thousand Dollars ($4,000.00) for the violations of TILA and Regulation Z contained in Count Two;

D.    For an award of Young's reasonable attorneys' fees and costs for the violations contained in Counts One and Two; and,

E.    For all other relief that this Court may deem just and proper.


Dated: January 11, 2022            Law Office of Mitchell Chyette


By: _____
      Mitchell Chyette
      Attorney for Plaintiff  Laura Young

COMPLAINT and DEMAND FOR JURY TRIAL
*Laura Young v. Nationstar Mortgage, LLC d/b/a Mr. Cooper*
Case No.

## **JURY DEMAND**

Plaintiff Laura Young hereby respectfully demands a trial by jury on all such claims that may be so tried.

Dated: January 11, 2022                 Law Office of Mitchell Chyette

By: _____
    Mitchell Chyette
    Attorney for Plaintiff Laura Young